[SLAVE TRADE ACTS.  EVIDENCE.  PLEADING.]

## The UNITED STATES *against* GOODING.

Upon an indictment under the Slave Trade Act of the 20th of April, 1818, ch. 373. against the owner of the ship, testimony of the declarations of the master, being a part of the *res gestæ*, connected with acts in furtherance of the voyage, and within the scope of his authority, as agent of the owner, in the conduct of the guilty enterprise, is admissible in evidence against the owner.

Upon such an indictment against the owner, charging him with fitting out the ship with intent to employ her in the illegal voyage, evidence is admissible that he commanded, authorized, and superintended the fitment, through the instrumentality of his agents, without being personally present.

It is not essential to constitute a fitting out, under the acts of Congress, that every equipment necessary for a slave voyage, or any equipment peculiarly adapted to such a voyage, should be taken on board; it is sufficient if the vessel is actually fitted out with intent to be employed in the illegal voyage.

In such an indictment, it is not necessary to specify the particulars of the fitting out; it is sufficient to allege the offence in the words of the statute.

Nor is it necessary that there should be any principal offender to whom the defendant might be *aiding and abetting*. These terms in the statute do not refer to the relation of principal and accessory in cases of felony; both the actor, and he who aids and abets the act, are considered as principals.

It is necessary that the indictment should aver, that the vessel was built, fitted out, &c. or caused to sail, or be sent away, *within the jurisdiction of the United States.*

An averment that the ship was fitted out, &c. " with intent that the said vessel *should be employed*" in the slave trade, is fatally defective, the words of the statute being, "with intent *to employ*" the vessel in the slave trade, and exclusively referring to the intent of the party causing the act.

Objections to the form and sufficiency of the indictment may, in the discretion of the Court, be discussed, and decided during the trial before the jury; but, generally speaking, they ought regularly to be considered only upon a motion to quash the indictment, or in arrest of judgment, or on demurrer.

In criminal proceedings, the *onus probandi* rests upon the prosecutor, unless a different provision is expressly made by statute.

THIS was a prosecution in the Circuit Court of Maryland, against the defendant, Gooding, under the Slave Trade Act of the 20th of April, 1818, ch. 373. The indictment alleged, (1.) that the said Gooding, being a citizen of the United States, after the passing of the act of the Congress of the United States, entitled, " An act in addition to an act to prohibit the introduction of slaves into any port or place within the jurisdiction of the United States, from and after the first day of January, in the year of our Lord 1808, and to repeal certain parts of the same," that is to say, after the 20th of April, 1818, to wit, on the thirtieth day of September, in the year 1824, at the District of Maryland, did fit out for himself, as owner, in the port of Baltimore, within the jurisdiction of the United States, and within the jurisdiction of this Court, a certain vessel called the General Winder, with intent to employ the said vessel, the General Winder, in procuring negroes from a foreign country, to wit, from the continent of Africa, to be transported to another place, to wit, to the island of Cuba, in the West Indies, to be sold as slaves, contrary to the true intent and meaning of the act of Congress in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the said United States.

2. That the said Gooding, a citizen of the said United States, and residing therein, to wit, at the district aforesaid, after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, within the jurisdiction of this Court, at the district aforesaid, did, for himself, as owner, send away from the port of Baltimore, within the jurisdiction of the United States, a certain other vessel, called the General Winder, with intent to employ the said vessel, the General Winder, in procuring negroes from a foreign coun-

1827.

U. States
v.
Gooding.

try, to wit, from the continent of Africa, to be transported to another place, to wit, to the island of Cuba, to be sold as slaves, contrary to the true intent and meaning of the act of Congress in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the United States.

3. That the said Gooding, a citizen of the said United States, and residing therein, after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, at the district aforesaid, and within the jurisdiction of this Court, did aid in fitting out, for himself, as owner, in the port of Baltimore, within the jurisdiction of the United States, to wit, at the District aforesaid, a certain other vessel, called the General Winder, with intent that the said vessel, the General Winder, should be employed in procuring negroes from a foreign country, to wit, from the continent of Africa, to be transported to another place, to wit, to the island of Cuba, to be sold as slaves, contrary to the true intent and meaning of the act of Congress in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the said United States.

4. That the said Gooding, a citizen of the said United States, and residing therein, after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, at the District aforesaid, and within the jurisdiction of this Court, did abet the taking on board, from one of the coasts of Africa, divers negroes, to wit, 290, not being inhabitants, nor held to service by the laws of either of the States or territories of the United States, of a certain other vessel, called the General Winder, for the purpose of selling such negroes as slaves, contrary to the true intent and meaning of the act of Congress in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the said United States.

5. That the said Gooding, a citizen of the United States, and residing therein after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, at the District aforesaid, and within the jurisdiction of this Court,

did, for himself, as owner, cause to sail from the port of Baltimore, within the jurisdiction of the United States, a certain other vessel called the General Winder, with intent that the said vessel, the General Winder, should be employed in procuring negroes from a foreign country, to wit, from the continent of Africa, to be transported to another place, to wit, to the island of Cuba, to be sold as slaves contrary to the true intent and meaning of the act of Congress in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the said United States.

6. That the said Gooding, a citizen of the United States, and residing therein, after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, at the district aforesaid, and within the jurisdiction of this Court, did, for himself, as owner, cause to be sent away from the port of Baltimore, within the jurisdiction of the United States, a certain other vessel, called the General Winder, with intent that the said vessel, the General Winder, should be employed in procuring negroes from a foreign country, to wit, from the continent of Africa, to be transported to a certain other place, to wit, to the island of Cuba, to be sold as slaves, contrary to the true intent and meaning of the act of Congress, in such case made and provided, to the evil example of all others in like case offending, and against the peace, government, and dignity of the said United States.

7. That the said Gooding, a citizen of the United States and residing therein, after the passing of the act of Congress aforesaid, to wit, on the day and year last aforesaid, at the District aforesaid, and within the jurisdiction of this Cou t, did, for himself as owner, or for other persons, as factor, fit out, equip, load, or otherwise prepare, a certain other ship or vessel called the General Winder, in the port of Baltimore, within the jurisdiction of the United States, to wit, at the District aforesaid, or did cause the same ship or vessel, the General Winder, to be so fitted out, equipped, loaded, or otherwise prepared, with intent that the said ship or vessel, the General Winder, should be employed in procuring negroes, mulattoes, or persons of colour, from a foreign kingdom, place or country, to wit, from the continent of Africa, to be transported to another port or place, to wit.

1827.

U. States
v.
Gooding.

the island of Cuba, in the West Indies, to be there sold, or otherwise disposed of as slaves, or held to labour or service, contrary to the true intent and meaning of the act of Congress, in such case made and provided, to the evil example of all others in like case offending, and against the peace, government and dignity of the said United States.

At the trial in the Circuit Court, the United States offered evidence that the defendant purchased of one M'Elderry the vessel called the General Winder, in the indictment mentioned, and that said vessel was built in the port of Baltimore, also in the said indictment mentioned. They further offered in evidence, that at the time said purchase was made, the said vessel was not completely finished, and that the same was finished under the superintendence of a certain Captain John Hill, who was appointed by the defendant master of said vessel on her then intended voyage. They also offered in evidence, that the defendant was, at the time when the offence laid in the indictment is charged to have been committed, and at the time of his purchase of the said vessel, and ever since has been, a citizen of the United States, and has constantly, from the time of the purchase of the said vessel, till the present period, been an actual resident of the said port of Baltimore.

They further offered evidence, that after the said purchase, and after the appointment of the said captain Hill as master as aforesaid, the said Hill ordered various fitments for the said vessel at the said port of Baltimore, which said fitments were furnished for said vessel, and afterwards, on the order of said Hill, were paid for by the defendant. They also offered in evidence, that some of these fitments were peculiarly adapted for the slave trade, and are never put on board any other vessels than those intended for such trade ; a part of such fitments so ordered by captain Hill and paid for by the defendant, to wit, three dozen of brooms, eighteen scrapers, and two trumpets, were actually put on board the General Winder in the port of Baltimore, the residue of the equipments on board the General Winder at the time of her departure, being such as are usual on board vessels carrying on trade between said port and the West Indies. And the rest of such fitments, peculiar to the slave trade as

aforesaid, were shipped at the said port of Baltimore, on board another vessel called the Pocahontas, chartered by the defendant: That the said vessel called the General Winder, sailed from the port of Baltimore, fitted as aforesaid, and with the said Hill as master, on or about the twenty-first day of August, eighteen hundred and twenty-four, having cleared for the island of St. Thomas in the West Indies. That the other vessel called the Pocahontas also sailed for St. Thomas from the port of Baltimore, with the part of the said fitments put on board her as before mentioned, some time in the month of September following. They also gave evidence that both the said vessels, the General Winder and the Pocahontas, afterwards arrived at St. Thomas, and that at that island the said peculiar fitments shipped as aforesaid in the Pocahontas, were there transhipped from said vessel to the General Winder, the said Hill still being the master of the said last mentioned vessel. They also further offered in evidence, that the defendant, about six or seven months after the sailing of the General Winder from the said port of Baltimore, declared in the presence of a competent witness, that the General Winder had made him a good voyage, having arrived with a cargo of slaves, the witness thought he said 290, and that he also declared in the presence of the same witness at another time, that he, the defendant, was the sole owner of the said vessel, called the General Winder. They also offered in evidence by another witness, that the defendant had at another time declared in the presence of this other witness, that the said witness, who was a creditor of the defendant, should be paid one half his debt on the arrival of the General Winder at Trinidad de Cuba. The United States, further to support the said indictment, offered to give in evidence to the jury, by a certain Captain Peter L. Coit, that he, Captain Coit, was at St. Thomas while the General Winder was at that island, as before stated, in September, 1824, and that he was frequently on board the said vessel at that time at St. Thomas; that the said Captain Hill, the said master of the General Winder, then and there proposed to the said witness, Captain Coit, to engage on board the General Winder as mate for the voy-

1827.

U. States
v.
Gooding.

age then in progress, and described the same to be a voyage to the coast of Africa for slaves, and thence back to Trinidad de Cuba. That he offered to the said witness 70 dollars per month, and five dollars per head for every prime slave which should be brought to Cuba. That on the witness inquiring who would see the crew paid in the event of a disaster attending the voyage, Captain Hill replied, "uncle John," meaning, (as witness understood,) John Gooding the defendant.

The defendant's counsel objected to the admissibility of this evidence, and the judges divided in opinion upon its admissibility. They also moved the Court for its opinion upon the following points:

1. That on the charges contained in the 1st, 2d, 3d, 5th and 6th counts in the indictment, it is incumbent on the United States to prove that the vessel, named or mentioned in the indictment, was fitted out, sent away, caused to sail, or caused to be sent away, with intent to transport negroes from the coast of Africa to the island of Cuba.

2. That evidence, that the defendant caused the vessel in question to be fitted out by Captain John Hill, or any one else, will not support the first count in the indictment, in which he is charged with fitting her out himself.

3. That the first count charges a fitting out in the port of Baltimore, which, according to the true legal interpretation of the words in an indictment, means a complete equipment; and that evidence of a partial preparation here, and a further equipment at St. Thomas, will not support the charge contained in this count.

4. That the defendant cannot be convicted on the first count, because no offence is legally charged in the said count, it being necessary to specify the particular equipments in the indictment, in order that the defendant may have notice of the particular charge against him.

5. That the defendant cannot be convicted upon the third and fourth counts, because these counts do not charge any offence to have been committed by any principal, to whom the defendant was or could be aiding or abetting; also, that he cannot be convicted upon the fourth count, unless he was actually or constructively present when the negroes were

taken on board on the coast of Africa ; and if the defendant was in Baltimore at the time the said negroes were taken on board on the coast of Africa, he could not aid or abet within the meaning of the fourth section of the act of Congress of 20th of April, 1818, upon which he was indicted.

6. That the defendant cannot be convicted on the second, fifth and sixth counts in the indictment, because no legal offence is charged in either of these counts, the said counts not charging that the General Winder was built, fitted, equipped, loaded, or otherwise prepared, within the jurisdiction of the United States ; and that the said fifth and sixth counts are also defective in charging the defendant with intent *that the vessel should be employed* in the slave trade, instead of charging him with intent *to employ her.*

7. That the defendant cannot be convicted on the third, fourth, fifth, and sixth counts, unless there be a previous conviction of the principal in the offence, in the said counts mentioned.

The opinions of the judges being divided upon these points, and also upon the question of allowing objections to the form and sufficiency of the indictment to be discussed at the trial before the jury, the questions were certified to this Court for final determination.

The cause was argued by the *Attorney General* and Mr. *Coxe* for the United States, and by Mr. *Taney* and Mr. *Mitchell* for the defendant.

Mr. Justice Story delivered the opinion of the Court.

This is the case of an indictment against Gooding for being engaged in the slave trade, contrary to the prohibitions of the act of Congress of the 20th of April, 1818. It comes before us upon a certificate of division of opinions in the Circuit Court of the District of Maryland, upon certain points raised at the trial. We take this opportunity of expressing our anxiety, least, by too great indulgence to the wishes of counsel, questions of this sort should be frequently brought before this Court, and thus, in effect, an appeal in

*Margin notes:*

1827.

U. States
v
Gooding.

*March 12th and 13th.*

*March 16th,*

criminal cases become an ordinary proceeding to the manifest obstruction of public justice. and against the plain intendment of the acts of Congress. Cases of real doubt and difficulty, or of extensive consequence as to principle and application, and furnishing matter for very grave deliberation, are those alone. which can be reasonably presumed to have been within the purview of the legislature in allowing an appeal to this Court upon certificates of division. In this very case, some of the questions certified may have been argued and decided in the Court below upon the motion to quash the indictment; and there are others upon which it is understood, that the Circuit Court had no opportunity of passing a deliberate judgment.

Admissibility of the testimony of Coit.

The first question that arises is upon the division of opinions whether, under the circumstances of the case, the testimony of Captain Coit to the facts stated in the record, was admissible. That testimony was to the following effect: that he, Captain Coit, was at St. Thomas while the General Winder was at that island in September, 1824, and was frequently on board the vessel at that time; that Captain Hill, the master of the vessel, then and there proposed to the witness to engage on board the General Winder as mate for the voyage then in progress, and described the same to be a voyage to the coast of Africa, for slaves, and thence back to Trinidad de Cuba; that he offered to the witness seventy dollars per month, and five dollars per head for every prime slave which should be brought to Cuba; that on the witness inquiring who would see the crew paid in the event of a disaster attending the voyage, Captain Hill replied, " Uncle John," meaning (as the witness understood) John Gooding, the defendant.

It is to be observed, that, as preliminary to the admission of this testimony, evidence had been offered to prove that Gooding was owner of the vessel, that he lived at Baltimore, where she was fitted out, and that he appointed Hill master, and gave him authority to make the fitments for the voyage, and paid the bills therefor; that certain equipments were put on board peculiarly adapted for the slave trade; and that Gooding had made declarations that the vessel had been engaged in the slave trade, and had made him a good

voyage. The foundation of the authority of the master, the nature of the fitments, and the object and accomplishment of the voyage, being thus laid, the testimony of Captain Coit was offered as confirmatory of the proof, and properly admissible against the defendant. It was objected to, and now stands upon the objection before us. The argument is, that the testimony is not admissible, because, in criminal cases, the declarations of the master of the vessel are not evidence to charge the owner with an offence ; and that the doctrine of the binding effect of such declarations by known agents, is, and ought to be, confined to civil cases. We cannot yield to the force of the argument. In general the rules of evidence in criminal and civil cases are the same. Whatever the agent does, within the scope of his authority, binds his principal, and is deemed his act. It must, indeed, be shown, that the agent has the authority, and that the act is within its scope; but these being conceded, or proved, either by the course of business, or by express authorization, the same conclusion arises, in point of law, in both cases. Nor is there any authority for confining the rule to civil cases. On the contrary, it is the known and familiar principle of criminal jurisprudence, that he who commands, or procures a crime to be done, if it is done, is guilty of the crime, and the act is his act. This is so true, that even the agent may be innocent, when the procurer or principal may be convicted of guilt, as in the case of infants, or idiots, employed to administer poison. The proof of the command, or procurement, may be direct or indirect, positive or circumstantial; but this is matter for the consideration of the jury, and not of legal competency. So, in cases of conspiracy and riot, when once the conspiracy or combination is established, the act of one conspirator, in the prosecution of the enterprise, is considered the act of all, and is evidence against all. Each is deemed to consent to, or command, what is done by any other in furtherance of the common object. Upon the facts of the present case, the master was just as much a guilty principal as the owner, and just as much within the purview of the act by the illegal fitment.

The evidence here offered was not the mere declarations

1827.

U. States
v.
Gooding.

Testimony of
the declaration of the
master, being
a part of the
*res gestæ*, admissible
against the defendant.

1827.

U. States
v.
Gooding.

of the master upon other occasions totally disconnected with the objects of the voyage. These declarations were connected with acts in furtherance of the objects of the voyage, and within the general scope of his authority as conductor of the enterprise     He had an implied authority to hire a crew, and do other acts necessary for the voyage. The testimony went to establish, that he endeavoured to engage Captain Coit to go as mate for the voyage then in progress, and his declarations were all made with reference to that object, and as persuasives to the undertaking. They were, therefore, in the strictest sense, a part of the *res gestæ*, the necessary explanations attending the attempt to hire.     If he had hired a mate, the terms of the hiring, though verbal, would have been part of the act, and the nature of the voyage, as explained at the time, a necessary ingredient.     The act would have been so combined with the declarations, as to be inseparable without injustice.     The same authority from the owner which allows the master to hire the crew, justifies him in making such declarations and explanations as are proper to attain the object.     Those declarations and explanations are as much within the scope of the authority as the act of hiring itself.     Our opinion of the admissibility of this evidence proceeds upon the ground that these were not the naked declarations of the master, unaccompanied with his acts in that capacity, but declarations coupled with proceedings for the objects of the voyage, and while it was in progress.     We give no opinion upon the point whether mere declarations, under other circumstances, would have been admissible.     The principle which we maintain is stated with great clearness by Mr. Starkie, in his Treatise on Evidence.     (2 *Stark. Evid.* part 4. p. 60.)     "Where," says he, "the fact of agency has been proved, either expressly or presumptively, the act of the agent, co-extensive with the authority, is the act of the principal, whose mere instrument he is, and then, whatever the agent says within the scope of his authority, the principal says, and evidence may be given of such acts and declarations as if they had been actually done and made by the principal himself."[a]

a See also 2 *Stark. Evid.* part 4. p. 403, 404

The other questions arise from the instructions or opinions prayed for by the defendant at the trial upon matters of law, upon which, also, the judges were divided in opinion.

The first instruction prayed puts the point, whether the burthen of proof of the offences charged in the indictment did not rest upon the United States. Without question it does in all cases where a party stands charged with an offence, unless a different provision is made by some statute; for the general rule of our jurisprudence is, that the party accused need not establish his innocence; but it is for the government itself to prove his guilt before it is entitled to a verdict or conviction. This question has been abandoned at the argument here, and is too plain for controversy, since there is no statuteable provision altering the general principle in this particular.

The second instruction is conceived in very general terms, so general, indeed, that it cannot be supported if it is to be understood in its obvious sense. It asks the Court to instruct the jury that evidence that the defendant caused the vessel to be fitted out by Captain Hill, *or any one else*, will not support the first count in the indictment, in which the defendant is charged with fitting her out himself. This obviously covers the case where the fitting out is by the instrumentality of any other persons, however innocent of his design, even though the defendant himself should be personally present, either really or constructively, and superintending the whole operations. To this extent it is clearly unmaintainable. But, in a more restrictive sense, it involves the question, whether evidence that the owner commanded, authorized and superintended the fitment through his agents, without his personal presence, would support this count. We are of opinion in the affirmative. The act of Congress does not require that the fitting out should be by the owner personally, without the assistance or agency of others. The act itself is of a nature which forbids such a supposition. The fitment of a vessel is ordinarily, and, indeed, must be done through the instrumentality of others. It is not a single act, but a series of subordinate operations, requiring the co-operation of persons in various trades and arts, all conducing to the same end. It would be against the plain sense of the

1827.

U. States
v.
Gooding.

First instruction prayed, as to the *onus probandi.*

Second instruction.

1827.

U. States
v.
Gooding

legislature, to interpret its language to mean that the act which it punishes, and which must or may be done by many in the ordinary course of business, shall only be punishable when the extraordinary fact occurs of its being done by one person. If done by others under the command and direction of the owner, with his approbation and for his benefit, it is just as much in contemplation of law his own act, as if done by himself. To this extent, at least, the maxim may be safely applied, *qui facit per alium, facit per se.* And it cannot be material whether it be done in his absence from, or his presence in, the scene. Especially there can be no doubt that the principle ought to be applied with increased force, where the owner resides at the same port, or neighbourhood, and superintends the course of the operations, even if he does not see them. Even in the highest crimes, those who are present, aiding and commanding, or abetting, are deemed principals; and, if absent, in treason and in misdemeanours, they are still deemed principals; though it may be necessary, in treason, to lay the overt acts precisely according to the fact, from considerations peculiar to that offence. This instruction ought, therefore, to have been refused.

Third instruction.

The third instruction turns upon the point, whether the fitting out, in the sense of the act of Congress, means a complete equipment, so that a partial equipment only will extract the case from the prohibitions of the statute. This objection appears to us to proceed from a mistaken view of the facts applicable to the case. If the vessel actually sailed on her voyage from Baltimore for the purpose of employment in the slave trade, her fitment was complete for all the purposes of the act. It is by no means necessary, that every equipment for a slave voyage should have been taken on board at Baltimore; or, indeed, that any equipments exclusively applicable to such a voyage, should have been on board. The presence of such equipments may furnish strong presumptive proof of the object of the voyage, but they do not constitute the offence. The statute punishes the fitting out of a vessel with intent to employ her in the slave trade, however innocent the equipment may be, when designed for a lawful voyage. It is the act combined with the intent, and not either separately, which is punishable. Whether the

Not essential that the equipment should be complete to constitute a fitting out under the statute.

fitting out be fully adequate for the purposes of a slave voyage may, as matter of presumption, be more or less conclusive; but if the intent of the fitment be to carry on a slave voyage, and the vessel depart on the voyage, her fitting out is complete, so far as the parties deem it necessary for their object, and the statute reaches the case.

But we are also of opinion, that any preparations for a slave voyage, which clearly manifest or accompany the illegal intent, even though incomplete and imperfect, and before the departure of the vessel from port, do yet constitute a fitting out within the purview of the statute. This was held by this Court upon full consideration in the cases of the *Emily and Caroline*, (9 *Wheat. Rep.* 381.) and the *Plattsburg*, (10 *Wheat. Rep.* 133.) Those cases, indeed, arose upon the construction of the slave trade acts of 1794, 1800 and 1807; but the language of those acts is almost literally transcribed into the statute of 1818, and the construction adopted therein must govern the present case. In either view, therefore, our answer to the third prayer is, that a complete equipment is not necessary to be proved, but any partial preparation, which demonstrates or accompanies the illegal intent, will bring the case within the statute, and support the charge in the first count of the indictment.

The fourth instruction respects the sufficiency of the averments of the first count; and it is contended that there ought to have been a specification of the particulars of the fitting out; and that it is not sufficient to allege the act itself without them. The indictment, in this respect, follows the language of the statute, and is as certain as that is. We cannot perceive any good reason for holding the government to any greater certainty in the averments of the indictment. The fitting out of a vessel may, and must, consist of a variety of minute acts and preparations, almost infinite in their detail, and the enumeration would answer no valuable purpose to the defendant to assist him in his defence, and subserve no public policy. The fitting out of a vessel is a sort of business, which is as clear and definite as any other; and we might just as well in an indictment upon the act for building a ship with the illegal intent, require that the government

*1827.*

*U. States*
*v.*
*Gooding.*

Fourth instruction.

Not necessary to allege the particulars of the fitting out.

1827.

U. States
v.
Gooding.

should particularize the acts of building through their whole details, as those of equipment. The building of a ship is not an act more certain in its nature than the fitting out of a ship. The particular preparations are matters of evidence, and not of averment. Every man may well be presumed to know what are the fitments of a vessel for a voyage, without more particularity. The objection proceeds upon the supposition, that ordinary equipments only, though combined with the illegal intent, are not within the act; and that extraordinary equipments only for such a voyage are provided for. This has been already shown to be an incorrect exposition of the statute. It imputes no guilt to any particulars of the equipment, but to the act combined with the illegal intent.

General rule, that it is sufficient to allege the offence in the words of the statute, subject to exceptions.

In general, it may be said, that it is sufficient certainty in an indictment to allege the offence in the very terms of the statute. We say, in general, for there are doubtless cases where more particularity is required, either from the obvious intention of the legislature, or from the application of known principles of law. At the common law, in certain descriptions of offences, and especially of capital offences, great nicety and particularity are often necessary. The rules which regulate this branch of pleading were sometimes founded in considerations which no longer exist either in our own or in English jurisprudence; but a rule, being once established, it still prevails, although if the case were new, it might not now be incorporated into the law. So, again, in certain classes of statutes, the rule of very strict certainty has sometimes been applied where the common law furnished a close and appropriate analogy. Such are the cases of indictments for false pretences, and sending threatening letters, where the pretences and the letters are required to be set forth from the close analogy to indictments for perjury and forgery. Courts of law have thought such certainty not unreasonable or inconvenient, and calculated to put the plea of *autre fois acquit*, or *convict*, as well as of general defence at the trial, fairly within the power of the prisoner. But these instances are by no means considered as leading to the establishment of any general rule. On the contrary, the course has been to leave every class of cases to be decided

very much upon its own peculiar circumstances. Thus, in cases of conspiracy, it has never been held necessary to set forth the overt acts or means, though these might materially assist the prisoner's defence. So, in cases of solicitation to commit crimes, it has been held sufficient to state the act of solicitation, without any averment of the special means. And in endeavours to commit a revolt, which is by statute in England made a capital offence, it has always been deem-ed sufficient to allege the offence in the words of the statute, without setting forth any particulars of the manner or the means. These cases approach very near to the present; and if any, by way of precedent, ought to govern it, they well may govern it. The case of treason stands upon a pe-culiar ground; there the overt acts must, by statute, be specially laid in the indictment, and must be proved as laid. The very act, and mode of the act, must, therefore, be laid as it is intended to be proved. If the party be only con-structively a principal, as an absent and distant coadjutor or leader, it may be necessary to aver the fact accordingly. There is great good sense in the rule which has been laid down, that where the offence is made up of a number of mi-nute acts, which cannot be enumerated upon the record without great prolixity and inconvenience, and the danger of variance, they ought to be dispensed with. The present case is a fit illustration of the rule; the fitting out is a com-pound of various minute acts, almost incapable of exact specification.

The fifth instruction turns upon a doctrine applicable to principal and accessory in cases of felony, either at the com-mon law or by statute. The present is the case of a misde-meanour, and the doctrine, therefore, cannot be applied to it; for in cases of misdemeanours, all those who are con-cerned in aiding and abetting, as well as in perpetrating the act, are principals. Under such circumstances there is no room for the question of actual or constructive presence or absence; for whether present or absent, all are principals. They may be indicted and punished accordingly. Nor is the trial or conviction of an actor indispensable to furnish a right to try the person who aids or abets the act; each in the eye of the law is deemed guilty as a principal. In the

1827.

U. States
v.
Gooding.

Fifth instruc-tion.

The doctrine as to principal and accessory, in felonies, not applicable to the present case.

1827.

U. States
v.
Gooding.

present indictment, the offence is in the third and fourth counts laid by *aiding* and *abetting*, in the very terms of the act of Congress. If the crime, therefore, could be supposed to be of an accessorial nature, it is truly alleged, according to the fact, and not merely according to the intendment of law. We do not consider that the terms " aid" and " abet," used in this statute, are used as technical phrases belonging to the common law, because the offence is not made a felony, and, therefore, the words require no such interpretation. The statute punishes them as substantive offences, and not as accessorial, and the words are, therefore, to be understood as in the common parlance, and import assistance, co-operation, and encouragement. These

Seventh instruction.

remarks furnish an answer to the seventh instruction, which must share the fate of the fifth.

Sixth instruction.

The sixth instruction is that which has presented the most difficulty. It embraces two propositions; the first is, that the second, fifth, and sixth counts in the indictment, ought to have contained an averment that the vessel was built, fitted out, &c. within the jurisdiction of the United States; the second is, that the fifth and sixth counts do not allege the offence in the words of the statute, those words being, "*with intent to employ the vessel*" in the slave trade, &c. whereas each of these counts avers, " with *intent that the said vessel should be employed*" in the slave trade, which imports a very different state of facts. In order to understand these exceptions, it is necessary to attend carefully to the very words of the act of Congress. The second section enacts, " that no citizen or citizens, &c. shall, after the passing of this act as aforesaid, for himself, themselves, or any other person or persons whatsoever, either as master, factor, or owner, build, fit, equip, load, or otherwise prepare, any ship or vessel, in any port or place within the jurisdiction of the United States, nor cause any *such* ship or vessel to sail from any port or place whatsoever within the jurisdiction of the same, for the purpose of procuring any negroes, &c. to be transported, &c. as slaves." The third section enacts, " that every person or persons so building, fitting out, equipping, loading, or otherwise preparing, or sending away, or causing any of the acts aforesaid to be done, with intent to employ

*such* ship or vessel in such trade or business, after the passing of this act, contrary to the true intent and meaning thereof, or who shall in any wise be aiding or abetting therein, shall severally, on conviction thereof by due course of law, forfeit," &c. &c. The first point turns upon the interpretation of the words " such ship or vessel," in each of these sections. To what do they refer? The only ship or vessel spoken of in either section, is *such* as have been built, fitted out, &c. in some port or place of the United States. " Such ship or vessel" must, therefore, refer to a ship or vessel so built, fitted out, &c. as its antecedent, or the relative " such" can have no meaning at all. The word is sensible in the place where it occurs, and it is the duty of the Court, when it can, to give effect to every word in every enactment, if it can be done without violating the obvious intention of the legislature. This is a penal act, and is to be construed strictly, that is, with no intendment or extension beyond the import of the words used. There is no certainty that the legislature meant to prohibit the sailing of any vessel on a slave voyage, which had not been built, fitted out, &c. within the jurisdiction of the United States. If a foreign vessel, designed for the slave trade, and fully fitted out for that purpose, were, by accident or design, to anchor in our ports, it would not be reasonable to suppose that the legislature could have intended the sailing of such a vessel from our ports to be an offence within the purview of our laws. Yet, if the construction contended for on behalf of the United States be adopted, that would be the result.

But it is sufficient to say, that the word " such" has an appropriate sense, and can be reasonably referred only to the ship or vessel previously spoken of; and such ship or vessel is not merely one built, fitted out, &c. but one built, fitted out, &c. in a port or place within the United States. The whole description must be taken together. If we were to adopt any other construction, we should read the words as if " such" were struck out, and the clause stood, " any ship or vessel." Such a course would not be defensible in construing a penal statute. It is remarkable, that in the Slave Trade Acts of 1794, (2 *U. S. L.* 383.) and of 1807.

1827.

U. States
v.
Gooding.

Necessary to aver that the vessel was built, fitted out, &c. within the jurisdiction of the United States.

1827.

U. States
v.
Gooding.

(4 *U. S. L.* 94.) the word " such" is omitted, and seems to have been introduced into the act of 1818, *ex industria.* We must take the law as we find it, and, upon examination of its language, we are of opinion, that this exception is well taken. The cases of the *United States* v. *Lacoste,* (2 *Mason's Rep.* 129.) and *The United States* v. *Smith,* (2 *Mason's Rep.* 143.) have been cited at the bar as containing a different opinion expressed in the Circuit Court in Massachusetts. I owe it in candour to acknowledge, that the fact is so; but I have no recollection that the point was made at the argument; and I am confident that it never was insisted upon in the view which has been presented by the argument in this Court. My own error, however, can furnish no ground for its being adopted by this Court, in whose name I speak on the present occasion.

Defective averment that the vessel was caused to sail, or be sent away, "with intent that the said vessel should be employed" in the slave trade.

The other point is equally fatal. There is a clear distinction between causing a vessel to sail, or to be sent away, with intent to employ her in the slave trade, and with intent that she should be employed in that trade. The former applies to an intent of the party causing the act, the latter to the employment of the vessel, whether by himself or a stranger. The evidence may fully support these counts, and yet may not constitute an offence within the act of Congress; for the employment by a mere stranger would not justify the conviction of the party charged with causing her to sail, or to be sent away, with intent to employ her in the slave trade, as *owner.* There is no reason, in criminal cases, why the Court should help any such defective allegations. The words of the statute should be pursued.

Objections to the form and sufficiency of the indictment, may, in the discretion of the Court, be discussed during the trial; but regularly they ought to be considered upon a motion to quash the indictment, or in arrest of judgment, or on demurrer.

It remains only to consider the point, whether these objections to the sufficiency of the indictment could be properly taken at this stage of the proceedings. Undoubtedly, according to the regular course of practice, objections to the form and sufficiency of an indictment ought to be discussed upon a motion to quash the indictment, which may be granted or refused in the discretion of the Court, or upon demurrer to the indictment, or upon a motion in arrest of judgment, which are matters of right. The defendant has no right to insist that such objections should be discussed or decided during the trial of the facts by the jury. It would

OF THE UNITED STATES.

be very inconvenient and embarrassing, to allow a discussion of such topics during the progress of the cause before the jury, and introduce much confusion into the administration of public justice. But, we think, it is not wholly incompetent for the Court to entertain such questions during the trial, in the exercise of a sound discretion. It should, however, be rarely done, and only under circumstances of an extraordinary nature. The Circuit Court, in the present case, did allow the introduction and discussion of these questions during the trial, and were divided upon the propriety of the practice. We can only certify, that the Court possessed the authority, but that it ought not to be exercised except on very urgent occasions.

A certificate will be sent to the Circuit Court of the District of Maryland, according to this opinion.

CERTIFICATE. This cause came on, &c. On consideration whereof, it is ORDERED and ADJUDGED, that the following opinions be certified as the opinions of this Court on points of division to the Circuit Court aforesaid.

First. That the testimony of Peter L. Coit, set forth in the record, was, under the circumstances of the case, admissible as competent evidence against the defendant, Gooding.

Secondly. That the opinions prayed for by the counsel for the defendant, Gooding, in the first and sixth prayers, set forth in the record, were correct in law, and ought to have been given by the Court.

Thirdly. That the opinions prayed for in all the other prayers of the defendant, were incorrect in law, and ought to have been refused.

Fourthly. That the objections taken to the form and sufficiency of the indictment by the defendant's counsel, were not matters of right which the defendant might insist upon, and discuss, and require to be decided during the trial of the issue by the jury; and that the same should, according to the regular course of practice, have been discussed on a motion to quash the indictment, or on demurrer, or on motion in arrest of judgment; but that the Court had, never-

-theless, competent authority, in the exercise of a sound dis-
cretion, to permit such objections to be discussed and de-
cided during the trial.