## Samuel H. Hopkins *vs.* The Commonwealth.

The *St.* of 1812, *c.* 133, by conferring on the municipal court " jurisdiction," concurrent with the supreme judicial court, of all offences not capital, authorized that court to pass the same sentences on persons convicted of those offences, which the supreme judicial court was authorized to pass.

An indictment on *St.* 1804, *c.* 120, § 4, which alleged that the defendant had in his possession a counterfeit bank bill, " with intent to pass the same," was sufficient, without the averment of an intent to pass the same " as true."

By the Rev. Sts. *c.* 126, stealing in a dwellinghouse, in the night time, property of less value than $100, is punishable as a simple larceny only, by imprisonment not more than one year : But such stealing in the day time is punishable as an aggravated larceny, by imprisonment in the state prison, not more than five years, or in the county jail, not more than two years.

If an indictment for stealing, in a dwellinghouse, property of less value than $100, do not allege that the offence was committed " in the day time," the defendant, on conviction, can be sentenced only for a simple larceny ; and a sentence to more than one year's imprisonment is erroneous, and will be reversed on a writ of error.

Six writs of error. The whole matter is shown in the opinion of the court.

*G. Bemis*, for the plaintiff in error.

*Austin*, (Attorney General,) for the Commonwealth.

Shaw, C. J. A writ of error was brought by the prisoner, at the early part of the term in March 1841, to reverse a judgment for an additional punishment, as on a third conviction, rendered on an information at the municipal court at June term 1840. Several exceptions were taken at that time to the decisions of the judge on the information, and the case was brought before this court summarily, at the June adjournment, 1840 ; but the exceptions were overruled, and the judgment on the information was carried into effect. On the writ of error first above mentioned, the record was brought before us, and several errors were assigned, affecting the validity and regularity of some of the former convictions, which were set forth and relied upon as the basis of the judgment for an additional punishment on the information. But an opinion was then expressed, which has been since reiterated in *Wilde's case*, 2 Met. 408, that the information, being a distinct proceeding, collateral to the judgments on which it is founded, the validity and regularity of such

judgments cannot in this manner be drawn in question, and that they must be deemed valid, until set aside in regular course. One reason for this, in addition to those assigned in *Wilde's case*, is, that otherwise, the judgments of this and other courts of concurrent and superior jurisdiction might be reversed and annulled by the municipal court; which could not have been intended by the legislature. In consequence of the opinion then expressed, several writs of error were brought at the June adjournment 1841, with a view to reverse those former judgments.

The first is on a judgment of the municipal court, April term 1817, in which the prisoner was convicted of simple larceny, under the value of one hundred dollars, and sentenced to five days' solitary imprisonment, and one year at hard labor in the state prison. The error assigned is, that the municipal court had no authority to sentence a convict to the state prison for larceny, when the property stolen was not alleged to exceed the value of $ 100.

The law against larceny, in force when that conviction was had, was *St.* 1804, *c.* 143. By that statute, §§ 1, 2, the supreme judicial court only had jurisdiction of larcenies where the property stolen was alleged to exceed the value of $ 100 ; and the same court, together with the municipal court in the town of Boston and the court of common pleas in other counties, were invested with the jurisdiction, concurrently, of all larcenies, where the property stolen should not be alleged to exceed $ 100 in value. But the provision, on which this question turns, is this ; if a person was convicted, in the supreme judicial court, of stealing property not exceeding in value $ 100, he might be punished by solitary imprisonment, not exceeding six months, and confinement to hard labor not exceeding one year, in the state prison, or by fine and imprisonment in the common jail. But if convicted of a like offence, before the municipal court, he could only be punished by fine not exceeding $ 100, and imprisonment in the common jail, not exceeding one year, either or both.

Had the law so stood when this conviction took place, the

judgment of the municipal court, sentencing the prisoner to the state prison, would undoubtedly have been unauthorized and erroneous. But it is contended by the Attorney General, that the case, in this respect, has been altered by *St.* 1812, *c.* 133. This act provides, that the municipal court " shall have original *jurisdiction*, concurrent with the supreme judicial court, of all crimes and offences arising or happening within the county of Suffolk, not capital ; and the said municipal court shall and may exercise such jurisdiction, any law, usage, or custom notwithstanding ;" saving a right of appeal. This embraces every species of larceny, as well the more aggravated, as the more mitigated. The law declaring the punishment remained the same. The forum only was changed.

The word " jurisdiction " ( *jus dicere*) is a term of large and comprehensive import, and embraces every kind of judicial ac tion upon the subject matter, from finding the indictment to pronouncing the sentence. When the jurisdiction of the offence, with its penalties fixed by law, is transferred from one tribunal to another, it carries with it the power to inflict such punishment, to the same extent to which it was held by the court from which it was transferred. To have jurisdiction is to have power to inquire into the fact, to apply the law, and to declare the punishment, in a regular course of judicial proceeding. It seems to be conceded that such would be the effect of the transfer of jurisdiction, if the municipal court had not, before such transfer, had jurisdiction of larcenies, where the value of the property stolen was not alleged to be over $ 100. But as that court had this jurisdiction before, it is contended that the act cited could not enlarge its jurisdiction in this respect, without express words. This argument, we think, does not affect the construction of the statute. The manifest intent of the original statute was to provide that heinous larcenies, aggravated by circumstances not specifically mentioned in the statute, might be punished by confinement to hard labor in the state prison, though the property should not exceed $ 100. As the statute stood, this would be ordinarily accomplished by the exercise of a discriminating power, on the part of the grand

jury, acting under the advice of the prosecuting officer, in returning bills, in aggravated cases, into the supreme judicial court, and those for slighter offences, rising but little above a justice's jurisdiction, into the municipal court. But when the jurisdiction of the latter court was enlarged, so as to include all crimes of whatever magnitude, except a very few capital cases, this policy obviously changed. It was intended that substantially the whole criminal law, in the county of Suffolk, should be administered in that court ; reserving a concurrent jurisdiction in the supreme judicial court, to be exercised in an occasional case, where for some cause the judge of the municipal court could not sit, or where for any other special reasons it might be deemed expedient to have the case brought into the supreme judicial court in the first instance. Such being the provisions and such the policy of the law enlarging this jurisdiction, the court are of opinion that *St.* 1812, *c.* 133, vested in the municipal court a jurisdiction over all larcenies, of every kind, and that the power given by the statute to punish all larcenies necessarily passed with it.

The court are therefore of opinion, that this judgment was not erroneous, and that the same must be affirmed.

The same reasons and the same decision apply to another judgment of the municipal court at April term 1817, by which the prisoner, by the name of William Hopkins, was sentenced to five days' solitary imprisonment and one year to hard labor in the state prison ; also to another judgment of the municipal court, October term 1821, by which the prisoner, by the name of Samuel Hopkins, was sentenced to five days' solitary imprisonment, and one year to hard labor in the state prison. These judgments are affirmed.

Another of these writs of error is brought to reverse a judgment rendered against the prisoner, by the name of Joseph Davis, at the municipal court, at the January term 1825, for having in his possession a counterfeit bank bill, knowing it to be counterfeit, " with an intent to pass the same." The error assigned is, that the indictment is defective, in not alleging a possession of the counterfeit bill, with an intent to pass the same " as true."

This indictment was founded on *St.* 1804, *c.* 120, § 4, which enacts, that if any p⸱⸱son shall have in his possession within this State, any counterfeit ⸱ank bill, &c. for the purpose of rendering the same current as true, *or* with intent to pass the same, knowing the same to be counterfeit, &c. The provision in the *statute is made in the alternative ; it is the guilty possession of* the counterfeit note, with the guilty purpose of rendering the same current as true, *or* with intent to *pass the same.* The latter clause does not add the words, to pass the same " as true." The argument for the prisoner, however, assumes that this must have been intended by the legislature, and therefore must be so charged in the indictment. But we cannot perceive that such was the plain intent of the legislature, when the words do not express it. One object of the statute may have been to prevent one dealer in forged paper from passing counterfeit notes to another, as false notes, to enable and assist him in defrauding others. This is the more probable from the use of the alternative words. The intent to render the same current " as true," is provided for by the former clause. If the other clause was intended only to prohibit the intent to pass the same " as true," it would add nothing to the former provision ; it would only describe the same offence in other words. But the omission of the words " as true," strengthens the conclusion, that the legislature intended further to prohibit the passing of counterfeit bank bills " as money," or to be used or passed as money, by any person, at any rate of discount, or otherwise, whether, as between him and the immediate receiver, they were passed as true, or not. There is a case on another clause of the same statute, which leads, we think, to the same construction. *Commonwealth* v. *Cone*, 2 Mass. 132.

But then it is said this would give a greater effect to the word " pass," than that intended by the legislature, and would bring within the statute any person who innocently, and for any purpose, should hand over a counterfeit bill to another. But we think this would not be a just consequence. The word " pass," as used in this statute, and generally, as applied to bank notes, is technical. and means to deliver them as money, or as a known

and conventional substitute for money. The word must be construed to have the same meaning, when used in the statute, as in the indictment; and therefore, to sustain such an indictment, it must be proved that the party, who is charged, passed the counterfeit bill to another, for some valuable consideration or otherwise, as for money, or to be used as money, with the guilty purpose of defrauding the community.

But were this doubtful, we are of opinion, that the indictment would be sufficient. In setting out a statute offence, it is in general sufficient to describe it in the words of the statute *Commonwealth* v. *Cone*, 2 Mass. 135. *U. States* v. *Gooding* 12 Wheat. 474. *U. States* v. *Wilson*, 1 Bald. 119. There are some exceptions to this rule ; still it is to be regarded as the general rule, to prevail and have its effect, unless some good reason, arising from established precedent, or exact analogy, is shown to the contrary. No such reason is shown in the present case, and the court are of opinion that the conviction was right, and that this judgment must be affirmed.

Another writ of error is brought, to reverse a judgment of the municipal court, of August term 1838. The indictment charges the stealing of a coat of the value of fifteen dollars, in the dwellinghouse of one Stephen S. Stone, in Boston. Upon this indictment, the defendant was found guilty, and sentenced to be punished by three days' solitary imprisonment, and two years' hard labor in the state prison. The error alleged is, that the indictment is fatally defective in not averring that such larceny in the dwellinghouse was committed in the day time.

It cannot be legally held that this indictment is fatally defective to all purposes, on account of the want of the averment specified ; because it is undoubtedly sufficient to warrant a judgment for the simple larceny. But as the law (Rev. Sts. *c.* 126. § 17,) did not authorize so large a punishment, as imprisonment two years at hard labor in the state prison, for a simple larceny, under $ 100, but imprisonment for one year only, the next question is, whether the sentence which was awarded can be sustained upon such a conviction.

We have given this question a careful consideration. We

have thought it the more important, because an indictment of similar form is found in Davis's Justice, a work in general use in regulating the practice in criminal cases, in this Commonwealth, and may be presumed to have been extensively followed.

This indictment was founded on § 14 of the 126th chapter of the revised statutes. This section provides that every person who shall steal in the day time, in any dwellinghouse, office, bank, &c. or shall break and enter in the night time any meetinghouse, &c. shall be punished, &c. This was a revision, nearly in terms, of a similar provision, in *St.* 1804, *c.* 143, § 6.

It appears that stealing in a dwellinghouse in the day time is made an aggravated larceny, and punished by a severe penalty, not exceeding five years in the state prison. But it does not appear that stealing in a dwellinghouse in the night time is, in terms, made a specific and aggravated larceny ; and therefore it is contended in behalf of the prisoner, that laying the larceny to have been committed in a dwellinghouse, is adding no legal aggravation, and that the offence, therefore, can only be punished as a simple larceny, unattended with any aggravation. It has been argued, in behalf of the Commonwealth, that this could not have been intended by the legislature, because, in general, when crimes affecting the right of property or of habitation are committed in the night time, they were regarded by the law as of a more heinous character than the same crimes committed in the day time. Still, if the case has been omitted by the legislature, from whatever cause, the law must be carried into effect, as it stands, although we may believe the legislature intended to make a different provision, if in truth they have not so provided.

Stealing in a dwellinghouse, in the night time, does not necessarily involve the act of breaking or entering ; because an inmate or lodger may steal in the dwellinghouse, in the night time, without breaking, and even without passing in or out of it. Besides, the breaking and entering of a dwellinghouse and stealing in the night time, is a burglary, formerly capital, and now punishable by imprisonment for life.

It was then argued on the part of the Commonwealth, that as

a general rule of practice in criminal pleading, the usual course and understanding are, that when a fact is not alleged to be done in the night time, it is equivalent to averring expressly that it was done in the day time.    The practice is probably so ; and the reason probably is, that the averment that an act was done in the night time (*noctanter*, to use the old law phrase) was stating the act with an aggravation or qualification, which in law enhanced the offence, and therefore, if omitted, it was understood not to be charged, and then it would stand as a charge of the fact in the day time.    This would result from the rule already stated, that when the law declares the act done to be a crime, and when done under particular circumstances, as a greater crime, if alleged without adding the aggravating circumstances, it is a good charge of the mitigated offence. But here, we are satisfied, there is no law which, when larceny is charged, makes it more aggravated, or subject to higher punishment, if committed in a dwellinghouse in the night time. The rule, therefore, that omitting the averment of night time would be a charge of the fact in the day time, does not apply.

Besides — and this in our minds is a decisive answer — if such averment were deemed a good averment of a stealing in the day time, then, on this very indictment, simply charging a larceny in a dwellinghouse, on a certain day — that is, some part of the 24 hours constituting the day named — the prisoner could not be convicted on trial, if it were proved that it was done after daylight gone in the evening, or before daylight in the morning ; or, to express the same idea, in another form, and apply the usual test to the sufficiency of an indictment — all the facts stated in the indictment might be true, and yet the prisoner not be guilty of any offence beyond the simple larceny. He might have stolen the property mentioned, on some part of the 24 hours constituting the legal day named, and in a dwellinghouse, and yet could not be found guilty, by a general verdict ; because it might have been done after dark, and then it would not be the offence intended to be charged.

On the whole, the court are of opinion, that upon this conviction, the plaintiff in error could only be deemed legally con-

victed of simple larceny under $ 100 ; that that did not warrant the sentence to two years' hard labor in the state prison, and therefore that this judgment was erroneous, and ought to be, and hereby is, reversed.

Another writ of error is brought by the same prisoner, to reverse a judgment for an additional punishment by confinement to hard labor in the state prison for seven years ; which judgment was rendered on information, at the municipal court, June term 1840.

This judgment came before this court on exceptions, at June adjournment 1840.   Those exceptions were, that the law, imposing additional punishment, was unconstitutional, and some others, all of which were overruled.   It again came before the court at March term 1841, on writ of error, on the ground that various of the judgments, on which prior convictions were had, were irregular and erroneous.   The court were of opinion that the regularity of the former judgments could not be inquired into, on the trial of an information for additional punishment ; and there being then no other ground, on which to impeach that judgment, it was affirmed.

But now it appears, by the judgment just pronounced, that the judgment of the municipal court, at August term 1838, in pursuance whereof additional punishment was sought by the information filed in 1840, was erroneous, and did not warrant the judgment of two years to hard labor then imposed, and is now reversed.   The consequence of which is, that the judgment for additional punishment, on the same conviction, imposed by a sentence under the information filed in 1840, is erroneous and must be reversed.   And if it appears by the record and the return of the *habeas corpus,* that the plaintiff in error is not holden in the state prison under any other sentence than that rendered upon the judgment now reversed, he is entitled to his discharge.