Mr. Justice Hagner
delivered the opinion of the Court:
The indictment under which the defendant in this ease was tried, contains five counts; the first of which is in the following words: .
“ The grand jurors of the United States of America in and for the county and District aforesaid, upon their oath present: That one Thomas J. Bicksler, late of the county and District aforesaid, on the first day of January, in the year of our Lord one thousand eight hundred and eighty, and at divers other days between the said last named day and the date of the taking of this inquisition, at the county and District aforesaid, ten certain false, forged and counterfeit coins, each in the resemblance and similitude of the minor silver coinage which has been coined at the mints of the United States, called a half doller, ten certain false, forged 'and counterfeited coins, each in the resemblance and similitude of the minor silver coinage which has been coined at the mints of the United States, called a quarter dollar, ten certain false, forged and counterfeited coins, each in the resemblance and -similitude of the minor silver coinage which has been coined at the mints of the United States, called a "dime, and ten certain false, forged and counterfeited coins each’ in the resemblance and similitude of the minor silver poinage which has been coined at the mints of the United *343 States, called a half dime, with force and arms, unlawfully, 'knowingly and feloniously did have* in his possession with intent to defraud a certain person to the grand jurors afore-"eaidunknown, against the form of the statute in such case made and provided and against the peace and government ■of the United States of America.”
The second count is in the same words, except that the intent charged is to defraud, “ whosoever he might be able ~to defraud;” and the 3d, 4th and 5th. counts charge the intent to defraud certain individuals named in those counts respectively.
The jury rendered a verdict of guilty on the 1st, 2d and 5th counts, and not guilty as to the others ; and the court sentenced the prisoner to the penitentiary for eight years.
The case is here on a motion for a new trial on exceptions to several rulings of the court below.
1st. Section 3513 of the Revised Statutes of the United ■States, provides that:
“ The silver coins of the United States shall be a trade-dollar, a half dollar, or ñíty cent piece, a quarter dollar, or twenty-five cent piece, a dime, or ten cent piece,” &c. And it proceeds to establish the weight of the coins.
Section 3515 declares:
“ The minor coins of the United States shall be a five cent piece, a three cent piece and a one cent piece. The alloy for the five and three cent pieces shall be of copper and nickel, to be composed of three-fourths copper and one-fourth nickel.
“The alloy of the one cent piece shall be ninety-five per centum of copper and five per centum of tin and zinc, in such proportions as shall be determined by the Director of the Mint.”
* The section then proceeds to establish the weight of the minor coins.
It is 'evident these minor coins contain no particle of silver, er other substance than the copper and nickel composition in the proportions designated.
' It appears, then, that the lowest silver coin of the United States now recognised in use is the ten cent' piece, and that *344 “ the minor, coins ” of the United States can no more be properly called “ silver coins ” than they can be described as “gold coins.”
By section 5457, under Article “ Crimes,” it is provided that:
“ Every person who falsely makes, forges or counterfeits,, or causes or procures to be falsely made, forged or counterfeited, or willingly aids or assists in falsely making, forging or counterfeiting, any coin or bars in similitude of the gold or silver coins or bars which have been, or hereafter may be, coined or stamped at the mints and assay offices of the United States, or in resemblance or similitude of any foreign gold or silver com which by law is, or hereafter may be, current in the United States, or are in actual use and circulation as money within the United States, or who passes, utters, publishes or sells, or attempts to pass, utter, publish or sell, or bring into the United States from any foreign place, knowing the same to be false, forged or counterfeited, with intent to defraud any body politic or corporate, or any other person or persons whatsoever; or has in his possession any such false, forged or counterfeited coin or bars, knowing the same to be false, forged or counterfeited,, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, shall be punished by a fine of not more than five thousand dollars, and by imprisonment at hard labor not more than ten years.”
Then Section 5458 provides that—
“ Every person who falsely makes, forges or counterfeits,, or causes or procures to be falsely made, forged or counterfeited, any coins in the resemblance or similitude of any of the minor coinage which has been, or hereafter may be, coined at the mints of the United States; or who passes, utters,, publishes, or sells, or brings into the United States from any foreign place, or has in his possession, any such false, forged or counterfeited coin, with intent to defraud any person whatsoever, shall be punished by a fine of not more than one thousand dollars, and by imprisonment at hard labor for not more that three years.”
*345 These sections differ both in the description of fhe crimes therein denounced and as to their punishment.
The offence of having in possession counterfeits of gold or silver coins is not complete unless the accused had them in his possession “ knowing the same to be false, forged or counterfeited-,” whereas there is no necessity for the averment or proof of such scienter under the section punishing the possession of counterfeit minor coinage.
The accused for the former offence may be imprisoned to the extent of ten years, while the limit of imprisonment under the latter section is three years.
It is manifest the indictment was framed under Section 5458, both because the offence charged refers to the minor coinage, which is not comprehended under Section 5457; and also because it omits the charge of the scienter, which is indispensable under the latter section. And as the imprisonment under Section 5458 cannot exceed three years, the sentence for eight years was erroneous, and the judgment must be reversed upon this ground.
2d. The next inquiry is, whether the accused could be punished under this indictment at all, and whether we can remand the case to the court below for the imposition of a. sentence of imprisonment not exceeding three years. Section 3515, as we have seen, establishes «certain coins to which it affixes designations by which alone they are thereafter to be known. They are “ minor coins;” known by no other appellation ; and none other than these particular coins are embraced in that name. And as none of the minor coins contain silver, there is no such thing known to the law as “ minor silver coinage.” There is no silver money now coined less in value than the dime. The old five cent pieces, some of which remain in circulation, are not minor coins, within the meaning of the law. The punishment for forging them must be sought under the section punishing the counterfeiting of silver coins, and not under the section relating to the minor coinage; for that is no more silver than it is gold When the law mentions minor-coins it in fact declares that it refers to coins that are not silver. This indictment, there - *346 fore, is contradictory, and sets forth an offence not known to the law ; for we cannot reject the word “ silver ” as superfluous, and help out the indictment by intendment.
In the case of the United States vs. Gardner, in 10th Peters, the accused was indicted for counterfeiting sundry pieces of counterfeit coin in the resemblance of a foreign silver coin, to wit, a silver coin of Spain, called head-pista-reen. It appears that at a very early day Congress declared 'that the silver money of the United States should consist of dollars, half dollars, quarter dollars, dimes and half ditties, and established their respective values. It also declared that foreign silver coins should pass current at the rates of one hundred cents for the Spanish milled dollars, “ and in proportion for the parts of a dollar.” And by another act the punishment was prescribed for counterfeiting “ any coin in the 'resemblance or similitude of any foreign gold or silver coin which by law now is, or hereafter may be, made current in the United States.”
It appeared that the silver coin known as a head-pistareen of Spain, purported to be equal in value to one-fourth of the Spanish milled dollar, but that it commonly passed in the United States for twenty cents, although its value by assay at the mint was nineteen cents and a fraction.
The question for the court was whether the pistareen, passing current as a twenty cent piece, was a foreign coin which by law was current in the United States, so that the counterfeiting of such a coin could be punished under the statute. The Supreme Court decided that it was not. Although passing current in one sense, at the rate of'twenty c.ents, in was not current by law. The judgment of the court concluded in these words :
“ When the terms ‘ parts of a dollar ’ are used in these laws, it is in reference to the division of a dollar, as established at the mint; and there being no such part as a twenty cent piece, or fifth of a dollar, we think the pistareen is not a coin made current by law. But if this is a doubtful construction of the act, it ought to be adopted in a case so highly penal as the present.” *
*347 In this case there was no demurrer interposed, or motion to quash the indictment. But we nevertheless think we are at liberty to consider the defects in the indictment at this time in view of the decision in the case of United States vs. Gooding, 12 Wheat., 478. It was there held it was competent for the court while the case was under argument before the jury to1 pass upon defects in an indictment not presented by demurrer or motion to quash, although the practice was not one to be encouraged. In this case wTe arecompelled to notice this point. Our ruling upon this point 'does not exonerate the prisoner from future responsibility if he is guilty. The trial below was simply what is known as a mis-trial. The accused has been arraigned upon an indictment which is insufficient. In the case of Cochrane vs. The State, 6th Maryland, 406, while the judgment of the court below was found to be wrong because of insufficiency in the indictment it was still held that the party charged with the crime could be arrested immediately and held to answer. In view of the probability of such a re-trial it may be proper that we should proceed to notice some of the points argued here by the counsel for the prisoner.
3d. The first instruction asked by the counsel for the prisoner was:
‘‘In order to convict the defendant, the jury must be satisfied beyond a reasonable doubt that he had in his possession at the time of finding the indictment, or at other times theretofore before his arrest and confinement, the counterfeit money, or some of it charged in the indictment, with intent to defraud some one named or described in the indictment aud if they do not so find they will acquit him.”
If the word “ described ” is taken in its proper and legal signification, the' instruction was proper in form. If, however, it was designed as a request to the court to say that it was essential to give the name of the person to be defrauded, it was incorrect. The averment “to defraud a certain person to the jurors unknown,” or “ whomsoever he might be able to efraud,” was: a sufficient description within the terms of the statute. Thé court properly said it was not necessary *348 to show that this prisoner had any particular person in his mind, but if he had a general intention to. defraud and the fraud was afterwards perpetrated through his furnishing the counterfeit money, his general intention was to be applied to the particular fraud, whether the money was passed or not. But the statute does not require that there shall have been consummation of the fraud by actually passing the money. The offense consists in his having it in his possession with intent to defraud. The jury cannot convict unless they find this intent, and very properly, since a clergyman may have a counterfeit coin in his possession, which he may have received at church; but this possession is not criminal because it is unaccompanied by the intention to defraud.
4th. The court refused to instruct the jury that—
“ Unless they are satisfied from the evidence that there was a connection between the defendant, Westcot, and Baker, in the •passing of the said alleged counterfeit money, then they must acquit.”
But we have seen that it was of no consequence to the offence stated in the indictment, that the prisoner should have actually passed the money ; and if it were, there was no necessity that any connection between the parties named should be shown. If the prisoner had the counterfeit coin in his possession with an intention to defraud, the offence was complete ; and the court was right in refusing the instruction.
5th. The defendant then offered the following prayer :
“The court instructs the jury that the evidence of an accomplice is entirely for their consideration, and that whilst it is in their power to convict on the uncorroborated testimony of an accomplice, yet they ought not to find a verdict against the defendant when such evidence is not corroborated.”
This was granted by the court with the qualification that the facts testified to by other witnesses were competent evidence to be considered by the jury as corroborative of the testimony of Emma Baker, the accomplice.
In the recently reported case of The United States vs. Neverson *349 * this point was considered; and the law there, laid down that the jury may, if they see fit, convict, even in a capital case, upon the unsupported testimony of an áccomplice ; but the court should advise the jury that they should not convict upon unsupported evidence alone and without .corroboration.
6th. The defendant asked for the further instruction:
“ The jury must be satisfied beyond a reasonable doubt that the counterfeit coin described was passed upon some one of the parties named in the indictment, by defendant, or by some person or persons who procured said coin from defendant, and such actually at the request or with the knowledge of the defendant.”
This prayer again raises a point which we have already noticed, respecting the passing of the counterfeit money, a matter not at all involved in the charge under consideration , and was properly refused.
The cases referred to in Russell and Ryan, have been examined. They are not applicable here, for the reason that the statute of George II, upon which they are decided, is entirely different from ours, and does not undertake to punish the bare possession of the counterfeit money with intent to defraud, as is the case in our statute.
The judgment below is therefore reversed.

Ante, p, 162.