UNITED STATES of America
v.
William James SMITH.
Crim. A. No. 28835, Division B.

United States District Court
E. D. Louisiana,
New Orleans Division.
April 13, 1964.

Louis R. Lucas, Asst. U. S. Atty., for plaintiff.

C. Paul Barker of Dodd, Hirsch, Barker & Meunier, New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

During the summer of 1962 a carpenter's union was attempting to organize certain employees of the American Tent Company plant in Canton, Mississippi. The defendant, William James Smith, was a representative of that union. On July 5, 1962, defendant sent a letter to the law firm of Kullman & Lang in New Orleans, La. This law firm represented the American Tent Company (company) as labor counsel. In brief, the letter informed labor counsel that defendant possessed information concerning com-

pany's supplying of sub-standard materials under a contract with the United States Army Quartermaster Corps, and, as consideration for not reporting this alleged fraud on the government, defendant requested the reinstatement of three discharged employees. A Federal Grand Jury returned a one-count indictment against the defendant under 18 U.S.C. § 873, charging blackmail. At arraignment the defendant entered a plea of not guilty and in due course filed a motion to dismiss the indictment.

Defendant bases his argument in support of the motion on two basic premises, first, that the indictment is so vague and indefinite as to violate the principles of due process by not clearly stating the alleged crime he is accused of committing, and thereby preventing him from preparing an adequate defense, and secondly, that the indictment's ambiguity fails to prevent the defendant from being subjected to possible double jeopardy. In support of these two basic contentions defendant raises several separate points each of which requires careful consideration and analysis, especially since there is only meager reported case law interpreting the federal blackmail statute.

The Supreme Court in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), has restated the basic test against which an allegedly defective indictment is to be measured.

"These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." ' " (Citations omitted) 369 U.S. at 763–764, 82 S.Ct. at 1047, 8 L.Ed.2d 240.

Even though the old common law rules of technical criminal pleadings are obsolete and need not be followed in the fed-

eral courts,[1] it is still necessary for the indictment to include a "plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A. Moreover, there has been no relaxation of the rule requiring an indictment to set forth all of the elements of the offense sought to be charged. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Wilson v. United States, 158 F.2d 659 (5 Cir. 1947) cert. den. 330 U.S. 850, 67 S.Ct. 1095, 91 L.Ed. 1294. To that end, while it is essential that every ingredient of the offense must be alleged with precision and certainty[2], the failure to state every fact concerning the offense does not destroy the entire pleading. Hanf v. United States, 235 F.2d 710 (8 Cir. 1956) cert. den., 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 81. To require any extensive recitation of facts in the indictment itself would be favoring form over substance and would ignore both the wording of Rule 7(c) and the intent to simplify the form of indictment expressed by the Advisory Committee on Federal Criminal Rules.[3]

Essentially then, a comparison must be made, in light of the alleged offense, between the statute and the indictment to determine whether the aforementioned tests of procedural due process have been satisfied. The statute in question is the federal blackmail provision, 18 U.S.C.A. § 873:

"Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined not more than $2,000 or imprisoned not more than one year, or both."

In analyzing this statute it is evident that it defines two distinct types of activity which constitute blackmail, one being the "receiving" of some valuable thing, and the other the mere "demand" for a valuable thing. Since the indictment fails to specify that the defendant actually received anything of value, this Court agrees with defendant's contention that he is charged with merely making a "demand". Even a cursory inspection of the indictment supports this contention:

"The Grand Jury charges: That on or about July 5, 1962, at New Orleans, Louisiana, in the New Orleans Division of the Eastern District of Louisiana, one WILLIAM JAMES SMITH did knowingly and willfully demand a thing of value as a consideration for not informing against a violation of the laws of the United States in that, to-wit: on or about the date aforesaid the said WILLIAM JAMES SMITH did request in a letter sent to New Orleans, Louisiana, to the attorneys for the American Tent Company, the re-employment of certain discharged employees of said company as a consideration for not reporting certain information concerning alleged fraud in a contract between the American Tent Company and the Quartermaster Corps of the United States Army; all in violation of Title 18 United States Code, Section 873."

To the extent, then, that the indictment charges only one of the two possible offenses under the statute, it is specific and definite.[4]

---

1. Norris v. United States, 152 F.2d 808 (5 Cir. 1946), cert. den. 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623; See also 4 Barron & Holtzoff, Federal Practice and Procedure 59–60, § 1913 (Rules Ed.).

2. Clay v. United States, 218 F.2d 483 (5 Cir. 1955). The requirement of precise and certain expression in the indictment includes good draftsmanship. For comments from the Judges of the Fourth Circuit in this regard see United States

v. Roberts, 296 F.2d 198 (4 Cir. 1961) especially at pp. 201–202, cert. den. 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85.

3. Federal Rules of Criminal Procedure 18 U.S.C.A., Rule 7. Notes of Advisory Committee on Rules, Note to Subdivision (c).

4. One of the few cases construing this statute's predecessor held allegations in

■ Removed of its portions herein irrelevant, the statute makes it a crime to demand any valuable thing as consideration for not informing on a violation of a law of the United States. Putting it another way, blackmail "supposes the service to be unlawful and the payment to be involuntary." [5] Thus it appears that the elements of the crime charged under the federal blackmail statute are coercion and an unlawful consideration. [6]

This conclusion is buttressed by notable authority:

> "In some jurisdictions the offense (extortion) is not described as extortion when committed by a private person, but as 'blackmail', which is generally defined as the * * * obtaining of value from a person as a condition of refraining from making an accusation against him, or disclosing some secret calculated to operate to his prejudice." (Citing 18 U.S.C. § 873) 3 Anderson, Wharton's Criminal Law and Procedure, 794 § 1396 (1957 ed.)

■ 3 Anderson, Wharton's Criminal Law and Procedure, 794, § 1396 (1957 ed.). So long as the indictment clearly charges these two elements of the crime, then, it must be held sufficient. In examining the phraseology in the indictment, the parties are in accord that the document must be read as a whole. Imperial Meat Co. v. United States, 316 F.2d 435 (10 Cir. 1963); see also 4 Barron & Holtzoff, Federal Practice and Procedure, § 1913 n. 22 (Rules Ed. 1963 Supp.).

■■ Considering first the element of "coercion", the indictment sets forth the allegation that defendant demanded a thing of value as consideration for not informing against a violation of United States laws. Since "coercion" is the compelling of an act or choice under force, threat, or other pressure, it is clear that the element of "coercion" is charged in the indictment.

Secondly, and in addition, the consideration offered must have been unlawful. The indictment specifies that defendant's consideration was "not reporting certain information concerning alleged fraud in a contract between the American Tent Company and the Quartermaster Corps of the United States Army." The Quartermaster Corps is an agency of the United States, and any fraud perpetrated upon that agency is punishable by up to five years' imprisonment under 18 U.S.C. § 1001. Furthermore, it is a felony as defined by 18 U.S.C. § 1. Moreover, anyone having knowledge of the commission of a felony cognizable by a court of the United States must report such information as soon as possible or himself be guilty of a crime. [7] The indictment states that the defendant had knowledge of a fraud and that he offered to withhold that information. Such consideration is thus unlawful, and comprises the second element of the blackmail here charged.

Without more then, it can be said that the indictment charged defendant with all of the necessary elements of the crime. From such a complete charge

---

the indictment that defendant had "threatened to inform" and "received money for not informing" did not render the indictment fatal for duplicity where both violations were committed by the same person at approximately the same time. United States v. Fero, 18 F. 901 (E.D. Wis.1883). Hence, even though not necessary for the decision in this case, this Court would not consider a one-count indictment charging both a "demand" and a "receiving" to be fatal as duplicitious where both were committed by one person and the receipt followed the demand.

5. Black's Law Dictionary, 215 (1951 Ed.) "Blackmail".

6. The constitutionality of the statute is not here attacked, however, it is patently valid.

7. 18 U.S.C.A. § 4, Misprision of Felony: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both."

defendant should be able to adequately prepare his defense. Since the indictment also specifies with clarity and conciseness the date of the letter, and, in general terms, the addressee and contents, the defendant has ample protection in the record from any possible double jeopardy in regards this alleged blackmail.[8] However, further discussion of defendant's specific objections is necessary to clarify the holding here that the indictment is sufficient.

■ Defendant alleges that the indictment is fatally defective since it charges that defendant only made a "request" when the statute requires that a person must have made a "demand" to be guilty of blackmail. Defendant, for purposes of this contention, insists that technical accuracy and concise definition are an absolute necessity when construing the indictment. However, when reading the indictment as a whole, it is obvious that in the first clause it charges defendant with having made a "demand", and only in a later "to wit" clause is there a reference to defendant having made a "request". Viewing the indictment in its entirety it is apparent that the first clause paraphrased the statute and the "to wit" clause paraphrased the letter sent by defendant. At most, then, the use of the word "request" is a technical defect, and it is patently clear that mere formal or technical defects will not invalidate an otherwise proper indictment. "[N]o defect or imperfection in matter of form only,—and this includes *the manner of stating a fact,*—which does not tend to his prejudice, [accused] will vitiate the indictment." (Emphasis supplied) United States v. Rhodes, C.C., 30 F. 431. See also United States v. Olmstead, D.C., 5 F.2d 712; United States v. Jackson, C.C., 2 F. 502. Such a technical or formal variance which does not affect substantial right shall be disregarded. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. Here the defendant is clearly informed that the government is charging him with making a "demand", so that the later use of the word "request" in describing the content of the demanding letter is, at most, harmless error.

■ Defendant's second contention is a two-pronged attack that the indictment is fatally defective for failure to include the entire letter in the indictment, first for technical reasons and secondly on grounds that the grand jury may have charged defendant without seeing the whole letter, contending further, that had the grand jury seen the whole letter they may not have indicted defendant. Despite the general lack of case authority on this statute, there is some dicta available concerning the indictment's form where the demand was alleged to have been made in writing. In United States v. Fero, 18 F. 901 (D.C. E.D.Wisc.1883) the Court stated that in a blackmail case "it would probably be necessary to set out the writing *in haec verba.*" 18 F. at 906. Under the broad provisions of Rule 7(c) though, use of "the same words" is not necessary. Support for this proposition can be found by analogy to forgery cases,[9] wherein indictments need not recite the entire document nor contain a copy of the instrument, nor even state the wording of the forged portion *in haec verba.*[10]

■■ The other prong in the second contention asserts that the letter ought to be included so that the defendant will be assured the grand jury saw the whole letter and returned the indictment only after having all the facts before it. While the Fifth Amendment to the Constitution grants the right to have the case presented to the grand jury, there

8. See Dendy v. United States, 290 F.2d 222, (2 Cir. 1961) as to sufficiency preventing double jeopardy under 18 U.S. C.A. § 495, and Keys v. United States, 126 F.2d 181 (8 Cir. 1942) cert. den. 316 U.S. 694, 62 S.Ct. 1296, 86 L.Ed. 1764, under 18 U.S.C.A. § 875.

9. Under 18 U.S.C.A. § 495.

10. For example, see Mosheik v. United States, 63 F.2d 533 (5 Cir. 1933), cert. den. 290 U.S. 654, 54 S.Ct. 70, 78 L. Ed. 567; United States v. Starks, 6 F.R.D. 43 (1946).

is no Constitutional mandate that any particular evidence be made available to the jurors during their deliberations. A grand jury has been, historically, an inquisitorial, informing and accusing body which proceeds *ex parte* and is neither a trial body or the ultimate fact finder.[11] Defendant's reliance on Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) is misplaced. In Russell the defendants were indicted for failing to answer questions before a Congressional committee. The statute whereunder the indictment was returned made it a misdemeanor to refuse to answer "any question pertinent to the question under inquiry." The indictment there failed to state what was the question under inquiry at the time of the refusals, and the convictions were reversed. The Court concluded that a statement of the subject under inquiry was necessary in the indictment so that defendants would be apprised of what they must be prepared to meet. Russell v. United States, supra, 369 U.S. at 766, 82 S.Ct. at 1048, 8 L.Ed.2d 240. Thus, the Russell case is a restatement of the general "sufficient apprisal" rule as applied to an indictment under a particular statute. Where, as here, an indictment sufficiently apprises the defendant of the charges made against him, the absence of some further allegation does not render the indictment fatally defective. Since any further fact allegations would be unnecessary, it follows *a fortiori* that the whole of the letter would also be surplusage.

▋ For purposes of this motion and prior to the oral argument, defendant filed a copy of the letter in question into the record. His third contention avers that the letter, when taken as a whole, does not constitute a "demand". He then points to certain parts of the letter in support of this argument. Stress is laid on the following passage:

> "I assure you that if you see fit to go along with my request that I will never make an issue of this matter or use it in any future campaign. This matter is left completely at your discretion as to what you will do: but I might ask you do not take this matter lightly and not to consider it as an attempt by the Union to force upon the company a demand." [12]

---

11. 38 C.J.S. Grand Juries § 1a, p. 980.

12. "P.O. Box 283
Laurel, Mississippi
July 5, 1962

"Kullman-Lang
Attorneys at Law
Whitney Building
New Orleans, Louisiana

"Attention: Mr. Leslie Inman
Re: American Tent Company
Canton, Mississippi

"Gentlemen:

"It is very seldom that I write a letter of this nature and trust that you will give this one your due consideration.

"I am sure that you are aware that the product manufactured by the above mentioned company is classed as vital to national defense. I have information from more than one source that certain irregularities have occurred and are occurring in the manufacture of the tents. It is not the intention of myself or the Carpenter's Union to do anything that would bring this company into repute; but the nature of the information that I have, it is very possible that if brought to the attention of the proper authorities could close the doors of the company, cause them considerable financial embarrassment, and also they could be prosecuted for fraud. At this time this is all that I intend to say concerning this matter. If and when a National Labor Relations Board election is held, I will be in a position to sit down and discuss this matter with you further.

"We request that the company recall Harold G. King, Floyd McCrory and Ida Jackson and place them in the same status of employment as they were prior to their discharge. I assure you that if you see fit to go along with my request that I will never make an issue of this matter or use it in any future campaign. This matter is left completely at your discretion as to what you will do; but I might ask that you do not take this matter lightly and not to consider it as an attempt by the Union to force upon the company a demand.

"I shall await your answer which I trust will be by return mail; and if I do not

By further labelling the entire letter at least ambiguous and in the strongest sense exculpatory, defendant admits the possibility that the letter could be construed as a "demand". In the last analysis, the characterization of the letter as a criminal "demand" or as an innocent "request" must be determined by the finder of fact. As noted above, the grand jury is not the ultimate fact finder, nor, for purposes of a motion to dismiss, is the Court. Ever farther removed from the process of determining whether the letter constituted a demand or not is the defendant. His own self-serving declarations can not be permitted to absolutely negate any construction of the letter as a demand. Because of the absence of case law on the point it is again necessary to draw an analogy, this time to the law of assault. The intent necessary for the perpetration of an assault upon another person is measured not by what the actor intends, but by the apprehension of the person against whom the act is directed.[13] So also where a letter is transmitted to another party. Whether that letter should be considered as a demand or not ought to be determined by the apprehension in the mind of the receiver. Just as a person may be guilty of assault when he knows the gun is not loaded, guilt attaches from the apprehension of the person staring down the barrel. Thus, even though defendant here said in the letter that it was not a "demand", the receiving party and the jury could determine otherwise. Were the law to the contrary, the most vile and unwarranted threats incident to a blackmail could be made in the body of a letter and yet the sender could absolve himself from guilt by merely concluding with the statement that the letter is only a request, not a demand. This would be absurd.

Next, defendant contends that the indictment fails to charge him with demanding "a thing of value". Aside and apart from the bald phrase in the indictment alleging that defendant "did knowingly and willfully demand a thing of value," it is contended that in no way does the indictment spell out how or on what theory the government contends that the "re-employment of certain discharged employees" was a thing of value to defendant. It is conceded at the outset that the thing of value need not be money, but defendant strenuously contends that it must be something of value to the defendant, and also that the indictment must indicate how it is of value. The gist of this contention refers back to the proposition that defendant will not be able to properly defend himself without being so apprised.

The resolution of this problem involves answers to several intermediate issues, the first being whether the indictment need make more than the plain assertion that defendant "demanded a valuable thing." If the question is answered affirmatively, is the value of the thing to be measured by its worth to the person demanding it or by its worth to the person from whom it is demanded, or both, or neither. Finally, if the value is to be measured by its worth to the person demanding it, and that person demands something which would be of value only to some third party, can that value be imputed to the person making the demand.

As to whether the indictment need set forth more than the wording of the statute, reference need be made only to Rule 7(c) for the answer. Rule 7(c) requires that the indictment include a "plain, concise and definite written statement of the essential facts constituting the offense charged." Thus, a mere

---

hear from you within one week from the date of this letter, I shall turn the information that I have over to the proper authorities.
 "Sincerely yours,
 "W. J. Smith, Representative
"WJS/blc"

13. Restatement of Torts § 21(1); 6 Am. Jur.2d 98, Assault and Battery § 115.

paraphrasing of the statutory language would be insufficient since the statute contains general terms.[14] To satisfy both the requirements of pleading "essential facts" and the mandate to "sufficiently apprise" the defendant of the charge against him, some reference must be made in the indictment to the thing demanded. The indictment here satisfies the letter of this principle where it refers to the defendant's "request" for "re-employment of certain discharged employees."

Next we come to a consideration of whether the thing demanded must be valuable to the defendant personally, or whether its worth may instead be measured by value to some other individual. At this point we have four parties to consider: Defendant, labor counsel, company and discharged employees. Most obviously, the re-hiring of these discharged employees would be a thing of value to both company and discharged employees since the net effect on those parties could be calculated in monetary terms. However, neither of those parties were privy to the letter wherein the demand was made, and defendant contends that the demand made does not expressly indicate how it could be of value to himself. Impliedly defendant also urges that the thing demanded could not have been of any value to labor counsel either.

All of the cases under the blackmail statute, save one, concern demands by the defendant for money. That one case forming the exception is a "per curiam" decision[15] which fails to recite the facts at any great length; it appears that the valuable thing sought by defendant was a prosecution witness' refusal to testify. Cases wherein money was demanded are of little assistance here since money is valuable to both parties. Likewise where the "thing" is measurable in monetary terms. The blackmail statute makes no distinction as to how or where the value

of the thing demanded is to be measured, but rather, uses the wording "demands * * * any * * * valuable thing." The absence of words of limitation leads to the conclusion that a demand for a thing of value to "any person" is the evil sought to be condemned. In a case concerning false personation of a United States Officer under the predecessor section of 18 U.S.C. § 912, a section employing the term "thing of value", the Supreme Court touched on the question of whether "value" can be measured according to the person parting with the thing.

In that decision, United States v. Lepowitch, 318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091 (1943), the Court recognized the necessity for considering more than value to the wrongdoer where it stated that "a person may be defrauded although he parts with something of no measurable value at all."[16] While that case is clearly distinguishable from the instant case, by way of analogy the Lepowitch case is helpful in determining that the thing of value demanded need not be measured by worth to the demanding party.

Having determined that "value" can be measured by someone other than the defendant, it is necessary to determine whether that other someone can be a person not privy to the letter. Again, the broad wording of the blackmail statute would not eliminate such a conclusion. On the contrary, any narrow construction of the statute confining "value" to the immediate parties would defeat a significant part of the statute's purpose. The federal blackmail statute is designed to punish those persons who are willing to perform an unlawful service as consideration for an involuntary payment. Under this broad purpose it becomes illegal to demand any thing of any value to any person. The mere fact that most blackmailers are driven by a sense of greed and personal benefit should not

14. But use of the statutory language alone may be sufficient where the statute is specific. See United States v. Lepowitch, 318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091 (1943).

15. Friedman v. United States, 190 F.2d 364 (6 Cir. 1951) cert. den. 342 U.S. 825, 72 S.Ct. 46, 96 L.Ed. 624.

16. 318 U.S. at 705, 63 S.Ct. at 916, 87 L.Ed. 1091.

circumscribe a class of wrongdoer's and eliminate one whose motives are based in charity, albeit perverted, as sort of a modern-day Robinhood. An individual who offers an unlawful service as consideration for a payment demanded on behalf of some third person ought not to be immune from punishment as a blackmailer on that basis alone. The purpose of the statute is to prevent precisely that type of activity regardless of where the benefit may ultimately reside. The government still carries the burden of proving beyond a reasonable doubt that something of value was demanded. At this time it is not possible to determine absolutely that the rehiring of discharged employees was not a thing of value under the blackmail statute.[17]

 Finally, by way of analogy, to the anti-kickback statute,[18] defendant contends that a demand made upon someone who was not in a position to grant the thing demanded could never constitute a blackmail. The anti-kickback statute, however, envisages a situation not even analogous to blackmail. In those situations the employee is threatened with discharge unless he remits part of his salary to the employer. In the case of United States v. Price, 122 F.Supp. 593 (D.C.E.D.Tenn.1954) a Union employee threatened to "discharge" three non-union employees unless they gave him a kick-back. The Court there examined the legislative history behind the statute and held that racketeering amongst employees was not covered by the statute, so that where the person making the demand was not in a position to actually carry out his threats, no violation of *that statute* occurred. Hence, legislative intent was the determinative factor. So stated, the two situations are clearly distinguishable.

At issue here is whether the *threatened* party was in a position to carry out the demand. The defendant contends that the attorneys for the company were not agents and hence had no authority to order re-employment of the discharged employees. The short answer to this contention is best illustrated with another question: "Why then did defendant direct the demand to labor counsel rather than the company?" Apparently defendant expected some tangible results from his letter. The indictment states that the letter was sent "to New Orleans, Louisiana, to the attorneys for the American Tent Company." While it is not clear from the face of the indictment what chain of events would have been necessary for the attorneys to carry out the demand, such precision is unnecessary under Rule 7(c) so long as essential facts are alleged. Here the only essential fact necessary is that the addressee was attorney for the company. Furthermore, defendant is ignoring the realities of the situation. The field of labor law is highly complex and often volatile. Both labor and management recognize these facts and therefore rely heavily on the advice of counsel before acting. Hence, a demanding threat concerning labor relations and directed to labor attorneys would be expected to attach greater significance than had it been directed to the company. While the government must prove that the letter constituted a demand and amounted to a threat, an indictment which avers that the demand was made on attorneys for the company is sufficient to inform defendant that he is being charged with having made a demand that was not completely outside the realm of possibility.

For the reasons set forth above, the indictment sufficiently apprises the defendant of the charges made against him and adequately protects him from double jeopardy. Consequently, defendant's motion to dismiss the indictment is respectfully denied.

It is so ordered.

17. By so interpreting the purpose of the blackmail statute it becomes unnecessary to determine whether the "value" need be technically imputed to the defendant or not.

18. 18 U.S.C.A. § 874.