**UNITED STATES of America**
**v.**
**John Peter VOGT.**
**Crim. No. 29340–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.
June 24, 1964.

608

---

L. Howard McCurdy, Asst. U. S. Atty., New Orleans, La., for the Government.

Amos L. Ponder, Jr., New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

Before dawn on the morning of October 22, 1960, the 6200 gross ton Motorship *Lorenzo Marcello* was working its way up the Mississippi River towards the Port of New Orleans on a voyage that had commenced over a month earlier in Genoa, Italy, and had included calls to various Mediterranean, Atlantic, Caribbean and Gulf ports. The defendant, John Peter Vogt, a duly registered and qualified river pilot, was the compulsory licensed state pilot on the bridge. At the same time the Steamship *Alcoa Corsair*, with 51 pas-

sengers and 2700 tons of general cargo, was proceeding down the Mississippi River from New Orleans at the start of a voyage to Caribbean and South American ports.

At approximately Mile 33, in the vicinity of "Tropical Bend Upper" light and Sixty Mile Point, and at 0416 hours, the two vessels collided in a meeting situation with the bow of the *Lorenzo Marcello* cutting into the starboard side of the *Alcoa Corsair's* Number 2 and Number 3 holds at about a 35-degree angle. The *Marcello* sustained bow damage and later proceeded under its own power to New Orleans. The *Corsair* received more serious damage and was beached on the East bank of the river to prevent it from sinking. There were no deaths or injuries aboard the *Marcello*, but aboard the *Corsair* five passengers and five crew members lost their lives and numerous others sustained injury.

Following an investigation and hearing by the U. S. Coast Guard, the case was referred to the Justice Department and the Grand Jury returned a separate one-count indictment against the pilot of each vessel under 18 U.S.C.A. § 1115, alleging misconduct or neglect of a ship's officer with resultant loss of life.[1]

The indictment against the pilot of the *Alcoa Corsair* is pending in Division A of this Court.

The indictment against this defendant charges:

> "That on or about October 22, 1960, at approximately Mile 33 of the Mississippi River and within the jurisdiction of this Honorable Court, John Peter Vogt being then and there the pilot of the M/V Lorenzo Marcello, a vessel within the meaning of Title 18, United States Code, Section 1115, did cause said vessel to be navigated

---

1. The first paragraph of that statute is applicable here:

"§ 1115. *Misconduct or neglect of ship officers*

"Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel

the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct or violation of law the life of any person is destroyed, shall be fined not more than $10,-000 or imprisoned not more than ten years, or both."

so that a collision was occasioned thereby with the SS Alcoa Corsair with a resultant loss of life; that said collision was caused by the misconduct, negligence and inattention to his duties of the said John Peter Vogt; all in violation of Title 18, United States Code, Section 1115."

The indictment was filed January 9, 1964, and on January 29, 1964, the defendant was arraigned, entered a plea of not guilty, and was granted additional time within which to file pleadings. In due course defendant filed a motion to dismiss the indictment. It is this motion which is now before the Court.

In support of this motion the defendant alleges that the indictment is fatally defective in that it fails to give sufficient information to prepare a proper defense to the charge, directing special attention to the wording of the indictment which merely tracks the "very general terms" of the statute. Defendant concludes that where the statute is couched in such terms the indictment must be more specific in order to satisfy the requirements of due process, and absent such additional information the indictment is fatally defective and the motion to dismiss should be granted.

 This Court has recently had occasion to examine the general law relative to the sufficiency of an indictment attacked by a motion to dismiss on grounds similar to those urged here. In that case, United States v. Smith, 228 F.Supp. 345 (1964), the defendant was charged with violating the federal blackmail statute, 18 U.S.C.A. § ·873. The basic test, applicable here also, was there determined to be the one stated in Russell

v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), that is

" 'whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet' " * * *.' " [2] (Citations omitted) 369 U.S. at 763, 82 S.Ct. at 1047. United States v. Smith, supra, 228 F.Supp at 346.

In considering whether all the elements of the crime are charged it is noted that the indictment specifies the defendant was the "pilot" of a "vessel" and by his "misconduct, negligence and inattention" he so "navigated" the vessel as to cause a "loss of life". In that respect the indictment charges all the necessary elements of the crime. See Russell v. United States, supra, 369 U.S. at 765, 82 S.Ct. 1038. The issue is then whether the indictment sufficiently apprises defendant of what he must be prepared to meet.

The thrust of defendant's attack is directed to the general nature of the words "misconduct, negligence, and inattention to his duties" as used in the indictment. It is urged that the Government has "failed to state what (the defendant) did do or what he failed to do that resulted in the loss of life" and has charged him with both a crime of omission as well as one of commission. The issue thus further resolves itself to whether the indictment must also specify the conduct or lack thereof which constitutes the defendant's "misconduct, negligence, and inattention to his duties."

In support of his position the defendant refers the Court to the only reported case on point wherein a motion to dismiss an indictment under this statute was granted.[3] In United States v. Holtz-

---

2. In both the Russell and the Smith cases the motions to dismiss the respective indictments also alleged that the generality of the indictment did not protect the defendants from possible double jeopardy. Such a contention was not even urged here. There would have been little merit in such a contention here since the indictment is sufficiently specific to prevent double jeopardy. See Hoopengarner v. United States, 270 F.2d 465 (6 Cir. 1959).

3. In only one other reported case has a motion to dismiss an indictment under this statute been granted, but there the dismissal stemmed from the draftsman's making a corporate executive a party defendant without naming the corporation a defendant. United States v. Harvey, D.C., 54 F.Supp. 910 (1943).

hauer, 40 F. 76 (D.C.N.J.1889), the captain and the pilot of the steamboat "Olivette" were charged in the first count of an indictment with having

> " 'so carelessly and negligently managed and conducted and performed their duties on said steam-boat and vessel so that, by and through their said misconduct, incompetency, unskillfulness, negligence, and inattention to their duties on said steamboat and vessel, the said steam-boat and vessel was by them run in and upon a certain dyke, or jetty, situate in the waters of the said Newark bay aforesaid, and the said vessel was then and there overturned and upset, and then and there the life of the said Augusta Weaver, a passenger thereon as aforesaid, was destroyed, she then and there being drowned; and she, the said Augusta Weaver, then and there died, contrary to the form of the act,' etc." 40 F. at 77.

After disposing of several jurisdictional issues the Court there stated the general constitutional right of a criminal defendant "to know the specific facts of the charge preferred against him," essentially the same as the rule stated above in the Russell case. In determining that the indictment was defective, the Court in Holtzhauer reasoned that:

> "the pleader has followed the words of the statute, but this is not always, or even ordinarily, enough. He should have described some facts upon which the government relied to prove 'misconduct,' 'negligence,' or 'inattention to his duties' on the part of one or both of the defendants. These words and phrases are vague, and may be subject to different meanings and interpretations. What did either of the defendants do or omit to do that makes him guilty of any one of these general charges? It would not have been impossible, or even difficult, to have set out the acts or omissions by the proof of which a conviction was to be asked for. The prosecuting officer must know what these acts or omissions were, and it

would be unreasonable and unjust to leave the defendants in ignorance of them until the day of trial, when, if they had been spread on the record, they could be disproved or satisfactorily explained." (Citations omitted) 40 F. at 79.

While the Holtzhauer case is not binding on this Court, without other considerations the logic there would be somewhat persuasive.

However, today the Federal Rules of Criminal Procedure only require that the indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), 18 U.S.C.A. When these rules were originally enacted the Advisory Committee noted that Rule 7(c) introduced a "simple form of indictment," and Alexander Holtzoff explained that it required only a "simple indictment, briefly and succinctly setting forth the facts of the specific crime." 3 F.R.D. 449. Thus, while the strict, technical form of the old common law criminal pleadings need not be followed in the federal courts, Norris v. United States, 152 F.2d 808 (5 Cir. 1946) cert. den. 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623, the Rules did not abolish the requirement that sound pleadings have substance, leaving the sufficiency of the indictment to be determined on the basis of practical rather than technical considerations. Schnautz v. United States, 263 F.2d 525 (5 Cir. 1959) cert. den. 360 U.S. 910, 79 S.Ct. 1294, 3 L.Ed.2d 1260; Duke v. United States, 233 F.2d 897 (5 Cir. 1956); United States v. Williams, 202 F.2d 712 (5 Cir. 1953) cert. den. 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 347; Parsons v. United States, 189 F.2d 252 (5 Cir. 1951).

It remains to determine then whether this indictment, as a practical matter, sufficiently apprises defendant of the charges against him. This indictment clearly states that as pilot of a vessel the defendant navigated that vessel in such a manner that it collided with another vessel and resulted in the loss of life. Missing is only any statement of

how defendant navigated the vessel and why that method of navigation was improper. In arguing that such an omission is fatal the defendant cites United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819 (1877) in support of his position. However, that case lends credence to the government's contentions instead. That case was decided under the strictures of the technical common law criminal pleading rules and yet the indictment was sustained even though it merely referred to an "intent to defraud" without spelling out all the acts or "essential facts" from which the criminal intent could be fairly inferred.

> "The means of effecting the criminal intent, * * * or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in the indictment." 96 U.S. at 364. See also, United States v. Gooding, 12 Wheat. 460, 25 U.S. 460, 6 L.Ed. 693 (1827).

The principle of that case thus appears to be that where all of the elements of a crime are included in an indictment, and one of those elements is a legal conclusion, the facts necessary to prove that element need not be included in the indictment. By analogy then, since it was not necessary in Simmons to spell out in the indictment the "essential facts" from which the legal conclusion that an "intent to defraud" was drawn, so also it should here be unnecessary to specify any additional "essential facts" producing the legal conclusion that "misconduct, negligence and inattention to duty" resulted in the loss of ten lives. More so would such a conclusion be proper under the modern criminal rules of procedure.

This court holds that the requirements of due process are satisfied where the indictment alleges that the defendant was the pilot of a vessel and by his mis-conduct, negligence and inattention to duty he so navigated the vessel as to cause loss of life, without further specifying what acts or omissions constituted the "misconduct, negligence and inattention to duty", so long as the facts are sufficient to protect the defendant from possible double jeopardy. Should the defendant desire additional facts to aid in the defense of his case he has available to him the procedure for a Bill of Particulars under Rule 7(f) 18 U.S.C.A.[4] The mere existence of this procedure is further indication that all facts need not be included in the indictment.

In light of the foregoing discussion it is ordered that defendant's motion to dismiss the indictment be, and the same is hereby denied.

---

4. Since the question is not presently before the Court, the Court expressly refuses to even imply an opinion, one way or the other, on the propriety of a motion for a Bill of Particulars in this case.